**2014 UT App 253**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
CHASTITY B. ASHCRAFT,
Defendant and Appellant.

Memorandum Decision
No. 20130818-CA
Filed October 23, 2014

Second District Court, Ogden Department
The Honorable Michael D. Lyon
No. 131900251

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Daniel W. Boyer, Attorneys
for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this
Memorandum Decision, in which JUDGES JAMES Z. DAVIS and
MICHELE M. CHRISTIANSEN concurred.[1]

GREENWOOD, Senior Judge:

¶1     Chastity B. Ashcraft appeals the sentence imposed by the
trial court after she pleaded guilty to one count of child abuse, a
third degree felony. *See* Utah Code Ann. § 76-5-109(2)(b)
(LexisNexis 2012). Ashcraft argues that the trial court abused its
discretion in sentencing her to prison rather than probation. We
affirm.

¶2     The State charged Ashcraft with child abuse based on
allegations that her twenty-three month old son (Child) suffered

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

brain injuries while under Ashcraft's custody and control. Although Ashcraft claimed that Child injured himself when he had a tantrum and threw himself from a standing position onto a carpeted floor, Ashcraft eventually pleaded guilty as charged.[2] In exchange for her plea, the State agreed to recommend reducing the degree of Ashcraft's conviction upon her successful completion of probation pursuant to Utah Code section 76-3-402(2). *See id.* § 76-3-402(2) (providing a sentencing court discretion to reduce the degree of a conviction to the next lower degree after the defendant has been successfully discharged from probation). The prosecutor indicated at the subsequent change of plea hearing that the offer was that the prosecution would "submit at sentencing," i.e., stay silent. At the sentencing hearing, however, Ashcraft's counsel stated that she believed that only the section 402(2) recommendation was in the plea agreement. The prosecutor responded that "in making an agreement . . . to not oppose a 4022 reduction, we are not also, unless we specifically put it [into] the agreement, recommending against prison" but that "we're not going so far as to recommend any sentence to the Court." On the other hand, Ashcraft's counsel urged the court to grant probation and argued that, among other things, Ashcraft had been punished enough because her children had been removed from her custody. Ultimately, the trial court sentenced Ashcraft to zero to five years in prison. Ashcraft appeals.

¶3　Ashcraft argues that the trial court exceeded its discretion in sentencing her to prison rather than granting her probation. "We review the trial court's imposition of sentence for an abuse of discretion." *State v. Wimberly*, 2013 UT App 160, ¶ 6, 305 P.3d 1072;

---

2. In her statement in support of her guilty plea, Ashcraft indicated that she understood the maximum sentence that may be imposed for the crime of child abuse and that her sentence could include a prison term. Ashcraft also acknowledged that the trial court was not bound by sentencing recommendations made or sought by defense counsel or the prosecution attorney. And at the change of plea hearing, Ashcraft indicated to the court that she understood the plea agreement and the rights she was waiving by signing it.

*see also State v. Killpack*, 2008 UT 49, ¶ 59, 191 P.3d 17 ("In general, a trial court's sentencing decision will not be overturned unless it exceeds statutory or constitutional limits, the judge failed to consider all the legally relevant factors, or the actions of the judge are so inherently unfair as to constitute an abuse of discretion." (citation and internal quotation marks omitted)). A trial court abuses its discretion "if the sentence is clearly excessive" or "if it can be said that no reasonable [person] would take the view adopted by the trial court." *State v. Moreau*, 2011 UT App 109, ¶ 6, 255 P.3d 689 (alteration in original) (citations and internal quotation marks omitted).

¶4     On appeal, Ashcraft contends that in sentencing her to prison, the trial court failed to properly weigh aggravating and mitigating circumstances existing in her case. In particular, Ashcraft first argues that the trial court based its decision to impose a prison sentence on a disputed scientific interpretation of evidence that Ashcraft "caused [Child's] injuries from a violent Shaken Baby Syndrome Attack." Ashcraft further contends that the trial court mistakenly relied on shaken baby syndrome in its assessment of two aggravating factors, namely, the severity of the injury to Child and Ashcraft's failure to accept responsibility for the harm caused. Second, Ashcraft argues that the trial court failed to consider as a mitigating factor the impact that incarceration would have on Ashcraft's children.

¶5     "A defendant is not entitled to probation, but rather the [trial] court is empowered to place the defendant on probation if it thinks that will best serve the ends of justice and is compatible with the public interest." *State v. Valdovinos*, 2003 UT App 432, ¶ 23, 82 P.3d 1167 (alteration in original) (citation and internal quotation marks omitted). In reviewing a sentencing decision, we afford the trial court "wide latitude and discretion . . . , recognizing that [it is] best situated to weigh the many intangibles of character, personality and attitude, of which the cold record gives little inkling." *Killpack*, 2008 UT 49, ¶ 58 (citation and internal quotation marks omitted). "Consequently, the decision of whether to grant probation must of necessity rest within the discretion of the judge who hears the case." *Id*. (citation and internal quotation marks

omitted). "Although courts must consider all legally relevant factors in making a sentencing decision, not all aggravating and mitigating factors are equally important, and [o]ne factor in mitigation or aggravation may weigh more than several factors on the opposite scale." *Id.* ¶ 59 (alteration in original) (citation and internal quotation marks omitted). "Thus, several mitigating circumstances claimed by a defendant may be outweighed by a few egregious aggravating factors." *Id.*

¶6    In this case, the trial court considered the information provided at the sentencing hearing and in Adult Probation and Parole's (AP&P) presentence investigation report (PSI) before sentencing Ashcraft to prison.[3] In explaining its decision, the trial court indicated that Ashcraft was "very abusive to [Child]," whose young age made him "very vulnerable." The trial court further indicated that Child "still suffers from equilibrium problems and is being fitted for a helmet to protect his skull." The trial court also explained that it would not grant probation to Ashcraft because she had not admitted that what she had done was wrong and because probation "is for people who admit their guilt, acknowledge the enormity of what they have done and want to be helped." Based on these findings, the trial court sentenced Ashcraft to prison.

¶7    Ashcraft argues nonetheless that the trial court's assessment of aggravating factors improperly assumed that Child's symptoms indicated the presence of shaken baby syndrome because there is disagreement in the medical community about whether the syndrome is "a valid scientific diagnosis." In making this argument, Ashcraft also suggests that she did not actually cause Child's injuries. However, Ashcraft places more significance on the trial court's brief reference to shaken baby syndrome than is warranted. At the sentencing hearing, the trial court requested and

---

3. The PSI included two aggravating circumstances: "Victim was particularly vulnerable" and "Injury to person or property loss was unusually extensive." The PSI did not identify any mitigating circumstances. The PSI indicated that probation was recommended under the guidelines, but that due to "[s]ignificant injury to a child," AP&P recommended imprisonment.

was provided with information about Child's current condition. The trial court then stated, "Frankly these symptoms are consistent with Shaken Baby's Syndrome or . . . slamming the child's head on a very hard surface. This explanation about the baby falling on a . . . carpeted floor is absurd." When read in context, the trial court simply appears to have referred to shaken baby syndrome in order to explain that it was not convinced by Ashcraft's claim that Child caused his own injuries by throwing himself on the carpet. The trial court's statement that Child's symptoms are "consistent with" shaken baby syndrome or bashing Child's head against a hard surface seems to acknowledge the trial court's assessment that Child's injuries were not self-inflicted and that Ashcraft was responsible for causing those injuries.

¶8    Notably, Ashcraft's guilty plea had established that she in fact caused Child's injuries. By pleading guilty to child abuse, Ashcraft admitted the elements of the crime, that is, that she "recklessly inflicted serious physical injury upon a child." *See* Utah Code Ann. § 76-5-109(2)(b) (LexisNexis 2012). Because it was no longer in dispute that Ashcraft caused Child's injuries, any reference to shaken baby syndrome was not essential to the trial court's consideration of the severity of Child's injuries and Ashcraft's consistent refusal to acknowledge that she caused Child harm. Ashcraft's argument therefore fails because the trial court did not need to take a scientific position on shaken baby syndrome in weighing these aggravating factors and because she otherwise has not argued that the trial court improperly considered Child's injuries and Ashcraft's lack of remorse as aggravating factors. *See State v. Ward*, 2012 UT App 346, ¶ 3, 293 P.3d 399 (per curiam) (affirming the trial court's imposition of a prison sentence where the trial court considered, among other things, the defendant's failure to "take[] responsibility for the harm he admittedly caused" as an aggravating factor)*; State v. Erskine*, 2011 UT App 20, ¶ 3, 246 P.3d 1218 (per curiam) (affirming a sentencing order where the trial court identified the "magnitude of the injuries sustained by the victims" as one of several aggravating factors). Consequently, the trial court acted within its discretion in considering the extent of Child's injuries and Ashcraft's failure to accept responsibility as aggravating factors in sentencing.

¶9     As to mitigating factors, Ashcraft argues that the trial court should have considered the impact incarceration would have on her children. At sentencing, Ashcraft's counsel argued that Ashcraft's children had been adversely affected by her conviction. Counsel also acknowledged that Ashcraft's children had been removed from her care and would likely be adopted by a relative. The PSI stated that Ashcraft's children were removed from her home by the State Division of Child and Family Services prior to the offense in this case, because of abuse issues. In light of these facts, we cannot say that the trial court should have given greater weight to the effect Ashcraft's incarceration would have on her children.

¶10    Under these circumstances, Ashcraft has not demonstrated that the trial court "failed to consider all legally relevant factors at sentencing or that the sentence was clearly excessive under the facts of the case." *See State v. Ricks*, 2014 UT App 85, ¶ 8, 325 P.3d 845 (per curiam). Accordingly, the trial court "acted within its wide latitude and discretion in sentencing [Ashcraft] to prison rather than suspending the prison sentence and placing [her] on probation."[4] *See State v. Wimberly*, 2013 UT App 160, ¶ 22, 305 P.3d 1072 (citation and internal quotation marks omitted).

¶11    We therefore affirm Ashcraft's sentence.

———

4. Ashcraft also argues that the trial court failed to give adequate weight to certain mitigating factors, including her "limited criminal history," evidence of her good character, and her "likely benefit from supervision." However, the trial court is only required to consider "the history, character, and rehabilitative needs of the defendant" when determining whether multiple offenses are to run concurrently or consecutively. Utah Code Ann. § 76-3-401(2) (LexisNexis 2012). Specific consideration of these factors is not required where, as here, consecutive sentencing is not at issue. *See State v. Moreau*, 2011 UT App 109, ¶ 8, 255 P.3d 689.